NOT DESIGNATED FOR PUBLICATION

Nos. 122,490
122,491

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AUBRY JOHNSON,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed April 23, 2021. Affirmed in part and remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., MALONE, J., and MCANANY, S.J.


PER CURIAM:  After Aubry Johnson was granted probation in two separate cases—17CR2653 and 18CR1636—the district court revoked his probation. Johnson now appeals, raising two issues. First, he claims his sentence in one case is illegal because his criminal history score was improperly calculated. Second, he claims the district court abused its discretion by revoking his probation in both cases and ordering him to serve his underlying prison sentences. After review, we agree with Johnson that his criminal history score may have been improperly calculated in 18CR1636, and we remand for the

1

district court to determine his correct criminal history. However, we find the district court did not abuse its discretion by revoking his probation in both cases after his third revocation hearing. We therefore affirm in part and remand in part.

FACTS

In 17CR2653, Johnson was convicted of aggravated domestic battery and two counts of endangering a child. The district court determined Johnson had a criminal history score of D, sentenced him to 22 months of imprisonment, and then granted him probation for 24 months. As part of the conditions of his probation, Johnson was to have no contact with the victim.

Johnson later admitted to violating the terms of his probation by having contact with his victim. The district court ordered Johnson to serve a 30-day jail sanction.

While on probation in 17CR2653, Johnson pled guilty in 18CR1636 to possession of marijuana with intent to distribute. At sentencing, the district court determined Johnson had a criminal history score of A based on: (1) his felony conviction in 17CR2653, (2) an Oklahoma pandering conviction, and (3) the aggregation of three person misdemeanor convictions—his two convictions for endangering a child in case 17CR2653 and an additional Oklahoma conviction for "transportation for purpose of prostitution." The district court sentenced Johnson to a 74-month term of imprisonment and then granted his downward dispositional departure motion to probation for 36 months. The district court also imposed the sentence in 18CR1636 concurrent to the sentence in 17CR2653.

About nine months later, Johnson stipulated to submitting a urine sample testing positive for alcohol. He received a 48-hour jail sanction as a result.

2

About 3 months after serving his 48-hour jail sanction, a warrant was issued for Johnson's arrest, alleging he had committed new crimes of child endangerment and again had contact with his victim.

After his arrest, a probation revocation hearing was held for both cases. At the hearing, Jami Moore testified she and her husband were driving and saw a baby lying in the middle of the road and a diaper bag next to the curb. They stopped their car, and Moore's husband called the police while Moore checked on the baby. As Moore's husband was calling the police, he heard crying from further up the street and saw a toddler in the grass next to the road.

While waiting for the police to arrive, a woman ran up to Moore, saying, "'My baby, my baby.'" The woman, later identified as S.S., told Moore, "'Their dad threw them out of the car.'" S.S. took the children and the diaper bag and went into a house near where the Moores were parked.

S.S. testified at the probation revocation hearing that Johnson was the father of the two children involved in the incident. S.S. acknowledged she and Johnson were not supposed to have contact with each other as a result of the 17CR2653 case. S.S. testified she left the children in her car while she was taking her other children and some groceries into Johnson's brother's house. S.S. did not recall saying anything about Johnson throwing the children out of the car. The children were taken into protective custody on the day of the incident and remained in state custody at the time of the revocation hearing.

Johnson testified at the probation revocation hearing and admitted to having contact with S.S. in violation of the terms of his probation.

The district court found Johnson violated his probation by having contact with S.S. The district court also found there was sufficient evidence to prove Johnson committed the offense of endangering a child. The district court specifically noted it found Moore's testimony "much more credible" than S.S.'s testimony. After finding Johnson committed a new crime while on probation, the district court revoked Johnson's probation in both cases and ordered him to serve his underlying prison sentences.

I.    JOHNSON'S PRIOR OUT-OF-STATE CRIMES MAY HAVE BEEN IMPROPERLY CLASSIFIED.

Johnson's first issue on appeal claims the district court improperly scored his prior convictions in Oklahoma as person convictions, resulting in an illegal sentence in 18CR1636.

*Standard of Review*

Appellate courts exercise unlimited review when determining whether a sentence is illegal within the meaning of K.S.A. 22-3504. *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015).

*Discussion*

A sentence is illegal if it (1) is imposed by a court without jurisdiction, (2) does not conform to the applicable statutory provisions, or (3) is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced. 301 Kan. at 1034. A sentence is not illegal "because of a change in the law that occurs after the sentence is pronounced." K.S.A. 2020 Supp. 22-3504(c)(1).

4

In Kansas, a person's sentence is established based on the severity of the person's crime of conviction and his or her prior criminal history. See K.S.A. 2020 Supp. 21-6804 (sentencing grid for nondrug crimes); K.S.A. 2020 Supp. 21-6805 (sentencing grid for drug crimes). Generally, criminal history is scored based on the severity of the prior conviction—misdemeanor or felony—and whether the prior conviction was a person or nonperson offense. See K.S.A. 2020 Supp. 21-6804; K.S.A. 2020 Supp. 21-6805; K.S.A. 2020 Supp. 21-6811. How prior out-of-state convictions are scored for criminal history purposes is controlled by K.S.A. 2020 Supp. 21-6811(e)(1).

At the time Johnson was convicted in 17CR2653 and 18CR1636, prior out-of-state convictions were classified as felony or misdemeanor convictions and person or nonperson offenses by referring the prior conviction to a "comparable offense" in Kansas on the date the current crime of conviction was committed. See K.S.A. 2017 Supp. 21-6811(e). How courts should determine whether an out-of-state conviction is a person or nonperson offense has been a frequent question before our appellate courts in recent years.

After Johnson was convicted in 17CR2653 and his conviction became final, but before he was convicted in 18CR1636, the Kansas Supreme Court decided *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018), where the court interpreted "'comparable offenses'" to mean "that the out-of-state crime cannot have broader elements than the Kansas reference offense" and adopted an "identical-or-narrower rule" approach to determine if an offense was comparable. The court later expanded on the *Wetrich* decision in *State v. Obregon*, 309 Kan. 1267, 1274, 444 P.3d 331 (2019), where the court addressed the identical-or-narrower rule in the context of divisible out-of-state statutes.

In *Obregon*, the court held that when an out-of-state conviction was the result of a divisible statute—one comprising multiple, alternative versions of the crime—a

sentencing court cannot determine whether the conviction arose under a particular alternative without viewing something more. The *Obregon* court held *Wetrich* allows the district court to examine a limited set of documents to determine which alternative means formed the basis of the defendant's conviction. *Obregon*, 309 Kan. at 1274-75.

The *Obregon* court also clarified the standard of review and burden of proof requirements in similar situations, making clear "the [State has the] burden . . . to establish that the defendant committed a version of the offense supporting the person classification." 309 Kan. at 1275. The court acknowledged the presentence investigation (PSI) report generally satisfies the State's burden, but "when the crime in question is an out-of-state offense with alternative means—some of which would not be comparable to Kansas person crimes—the State's burden is to establish that the defendant committed a version of the offense supporting the person classification." 309 Kan. at 1275. In *Obregon*, the PSI report did not indicate under what version of the out-of-state crime Obregon was convicted. The Kansas Supreme Court held when the out-of-state crime was broader on its face than its comparable Kansas offense, it should not have been classified as a person crime without supporting evidence. The court remanded the case for resentencing and imposed the burden on the State to prove Obregon's criminal history by a preponderance of the evidence. 309 Kan. at 1275-76.

In *State v. Weber*, 309 Kan. 1203, 1209, 442 P.3d 1044 (2019), the Kansas Supreme Court clarified that the rule in *Wetrich* was a "change in the law" which implicates K.S.A. 2019 Supp. 22-3504(c)(1). In essence, *Weber* made it clear the rule announced in *Wetrich* would not apply retroactively to sentences made final—such as Johnson's conviction in 17CR2653—before *Wetrich* was decided. *Weber*, 309 Kan. at 1209.

The State agrees Johnson's sentence in 18CR1636 is controlled by *Wetrich*. However, the State also argues *Wetrich* was wrongly decided by the Kansas Supreme

Court and should not apply here. But we are duty bound to follow Kansas Supreme Court precedent unless there is some indication the Kansas Supreme Court is departing from its previous position. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We observe no indication our Supreme Court is changing its position on this issue. Thus, we must consider whether the district court erred when it determined Johnson's criminal history score in 18CR1636.

The State contends Johnson should not be allowed to "shirk his burden" to show his sentence is illegal. The State argues Johnson agreed to his criminal history at the district court, he should be barred from raising his current argument. However, the State's argument is not persuasive because an illegal sentence can be challenged at any time.

The State relies on K.S.A. 2020 Supp. 21-6814(c), which initially places the burden on the State to prove an offender's criminal history. However, if the offender later challenges his or her criminal history after it has been established, "the burden of proof shall shift to the offender to prove such offender's criminal history by a preponderance of the evidence." K.S.A. 2020 Supp. 21-6814(c). But as the *Obregon* court made clear, the burden of proof rests on the State when it comes to establishing criminal history. *Obregon*, 309 Kan. at 1275-76; see also *State v. Chenault*, No. 121,998, 2020 WL 6935616, at *3 (Kan. App. 2020) (unpublished opinion) (finding State bears burden to prove criminal history even when defendant does not object to his or her criminal history at district court).

Johnson's criminal history includes two Oklahoma convictions he now argues were improperly scored: a 2015 conviction for pandering, contrary to Okla. Stat. tit. 21, § 1081, and a 2015 conviction for transportation for purpose of prostitution, contrary to Okla. Stat. tit. 21, § 1028.

The first conviction, pandering, was scored as a person felony. Okla. Stat. tit. 21, § 1081 defines pandering as:

> "Any person who shall procure any other person for prostitution, or who, by promise, threats, violence or by any device or scheme shall cause, induce, persuade or encourage another person to become a prostitute; or shall procure a place as inmate in a house of prostitution for another person; or who shall, by promise, threats, violence, or by any device or scheme cause, induce, persuade or encourage an inmate of a house of prostitution to remain therein as such inmate; or who shall, by fraud, or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority procure any other person to become a prostitute, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution, or who shall procure any other person, who has not previously practiced prostitution to become a prostitute within this state, or to come into this state or leave this state for the purpose of prostitution; or shall receive or give or agree to receive or give any money or thing of value for procuring or attempting to procure any other person to become an inmate of a house of prostitution within this state, or to come into this state or leave this state for the purpose of prostitution, shall be guilty of pandering."

The question then, as set out by *Wetrich*, is whether the Oklahoma offense is identical or narrower than the comparable Kansas offenses. The Oklahoma offense of pandering is divisible—there are multiple versions of the crime. But based on the record before us, it is not possible to determine under which part of the Oklahoma statute Johnson was convicted. It is possible Johnson was convicted for committing a crime which is covered by a Kansas statute. But it is equally possible Johnson was convicted of committing a crime not covered by a Kansas statute. For example, Oklahoma criminalizes "caus[ing], induc[ing], persuad[ing], or encourag[ing] another person to become a prostitute." Okla. Stat. tit. 21, § 1081. In contrast, Kansas prohibits "inducing another who is 18 years of age or older to become a person who sells sexual relations."

K.S.A. 2020 Supp. 21-6420(a)(4). The Oklahoma statute prohibits a broader range of conduct than the Kansas statute.

The State responds the meaning of inducing necessarily includes causing, persuading, or encouraging, but such a conclusion does not seem clear. Based purely on the language of the statute, it appears someone could be charged with pandering in Oklahoma for replying with an encouraging response to another person's statement of considering becoming a prostitute. See Okla. Stat. tit. 21, § 1081. The same is unlikely to occur under Kansas law. See K.S.A. 2020 Supp. 21-6420(a)(4). But without knowing exactly under which portion of the Oklahoma statute Johnson was convicted, we cannot determine if his Oklahoma conviction for pandering was properly scored as a person felony. See *Wetrich*, 307 Kan. at 562.

The other Oklahoma conviction at issue, transportation for purpose of prostitution, appears to have been a conviction under Okla. Stat. tit. 21, § 1028(e). Under that section, Oklahoma makes it unlawful:

"[t]o direct, take, or transport, or to offer or agree to take or transport, or aid or assist in transporting, any person to any house, place, building, other structure, vehicle, trailer, or other conveyance, or to any other person with knowledge or having reasonable cause to believe that the intent of such directing, taking or transporting is prostitution, lewdness or assignation."

Kansas prohibits "knowingly . . . procuring transportation for, paying for the transportation of, or transporting a person 18 years of age or older within this state with the intention of assisting or promoting that person's engaging in the sale of sexual relations." K.S.A. 2020 Supp. 21-6420(a)(7).

Johnson argues the Oklahoma statute is broader than the Kansas statute in two distinct ways. First, Johnson claims Oklahoma's required mental state of "knowledge or

9

having reasonable cause to believe" is broader than Kansas' knowingly requirement. Johnson also argues reasonable cause to believe the transportation was for prostitution would be insufficient to support a conviction in Kansas because in Kansas the accused must be acting with at least reasonable certainty. But Johnson fails to provide any support for his assertion that reasonable belief and reasonable certainty are functionally different. The failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority is akin to failing to brief the issue. When an issue is not adequately briefed, we deem it waived or abandoned. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

Johnson's final point is the Oklahoma statute is broader because it criminalizes transportation for assignation in addition to prostitution. Assignation is defined as "an appointment of time and place to meet secretly, esp. for engaging in illicit sex." Black's Law Dictionary 147 (11th ed. 2019). Criminalizing the transportation of someone for a sexual encounter but without the inclusion of a prostitution element is certainly broader than anything Kansas criminalizes in its comparable statutes. But the State responds Okla. Stat. tit. 21, § 1028(e) is a divisible statute and Johnson could have been convicted for transportation for actual prostitution. Based on the wording of Okla. Stat. tit. 21, § 1028(e), the statute does appear to be divisible. A person could be convicted for transporting if the intent is prostitution, lewdness, or assignation—three separate alternatives. But again, we cannot determine which one resulted in Johnson's conviction based on the record before us. We, therefore, must remand for the district court to determine whether the provisions of the Oklahoma statute under which Johnson was convicted is broader than the comparable Kansas offense, and the State bears the burden of proof. See *Obregon*, 309 Kan. at 1275-76.

II.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY REVOKING JOHNSON'S
        PROBATION.

Johnson argues the district court abused its discretion by committing an error of fact and making an unreasonable decision to revoke his probation.

*Standard of Review*

An appellate court reviews the district court's revocation of an offender's probation for an abuse of discretion. *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 (2020). A judicial action constitutes an abuse of discretion if it is arbitrary, fanciful, or unreasonable; it is based on an error of law; or it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

At a revocation hearing, the State must establish the probationer violated the terms of probation by a preponderance of the evidence—or that the violation "'is more probably true than not true.'" *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). Appellate courts review the district court's factual findings for substantial competent evidence. *State v. Yazell*, 311 Kan. 625, 627, 465 P.3d 1147 (2020). On review, we consider the evidence in the light most favorable to the prevailing party; we do not reweigh the evidence or reevaluate the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

*Discussion*

Johnson contends the district court committed an error of fact by finding there was sufficient evidence to show he committed the new crime of child endangerment in violation of the terms of his probation. In Kansas, child endangerment is defined as "knowingly and unreasonably causing or permitting a child under the age of 18 years to

be placed in a situation in which the child's life, body or health may be endangered." K.S.A. 2020 Supp. 21-5601(a). Here the evidence sufficiently supports the fact Johnson threw his children out of the car and into the road. Moore's testimony of where she observed the children and what S.S. told her at the time Moore found the children supports the district court's finding.

Johnson urges us to reconsider the evidence and find S.S.'s testimony more credible than Moore's. His request violates one of our rules of appellate practice. The district court is the fact-finder, not us, and the district court found Moore's testimony "much more credible" than S.S.'s. We cannot say otherwise. See *Daws*, 303 Kan. at 789. When viewed in a light most favorable to the State, it is clear the district court did not err when it found Johnson violated his probation by a preponderance of the evidence when he committed the new crime of endangerment of a child.

Johnson next argues the district court erred because no reasonable person would have revoked his probation and ordered him to serve his underlying prison sentences. Johnson tacitly acknowledges the district court had the authority under K.S.A. 2017 Supp. 22-3716(c)(8)(A) to impose his underlying sentences after finding he committed new crimes. See *Coleman*, 311 Kan. at 337 (holding probation revocation statute in effect at time defendant committed crime controls revocation of probation).

Upon review, we cannot say no reasonable person would have revoked Johnson's probation. Johnson had previously violated the terms of his probation, endangered his children while on probation, and acknowledged committing another crime by having contact with S.S. in violation of a protective order. It was not unreasonable for the district court to revoke Johnson's probation and order him to serve his underlying sentence.

We remand with directions for the district court to reconsider Johnson's criminal history score in 18CR1636 consistent with our opinion. If the district court finds the score

12

to be incorrect resulting in an illegal sentence, it must vacate Johnson's sentence and resentence him under the correct score. If the district court finds the score to be correct, then Johnson's existing sentence stands. Finally, finding no abuse of discretion by the district court, we affirm the revocation of Johnson's probation in both cases at his third revocation hearing.

Affirmed in part and remanded with directions.